MONCURE, P.,
after stating the case, proceeded:
The first and principal assignment of error in the decree appealed from in this case is, that credit was not therein given to the trustee, Coltrane, in the settlement of his account as trustee, for eight hundred and ten dollars, claimed by him as having been invested in 1863 or 1864 in Confederate bonds on account of the trust. This is indeed the only assignment of error on account of which, it seems, that an appeal in this case was allowed, though all the assignments of error made in the petition, or ore tenus or in writing, in the argument, will be noticed in this opinion.
I do not think there is any error in the decree in *respect to the said first and principal assignment of error. The investment of $810 therein mentioned was made out of money the largest part of which the trustee. Coltrane, admits he collected in Confederate money, in the spring of 1863, from C. F. Worrell. He says there were some small amounts collected from other parties, but he cannot state from whom.
Now, was he warranted by law in making such collection when and under the circumstances he did?
I say no, according to well-settled principles of law. In the spring of 1863 Confederate money was very greatly depreciated, and a fiduciary had not then a right to receive Confederate money at par in discharge of a well-secured specie debt, except under peculiar and extraordinary circumstances. The debt on account of which the said collection was . made was certainly a well-secured specie debt when such collection was made, and was most likely so to continue. Coltrane himself proves that C. W. Worrell, the debtor from whom the collection was made, “was and has been solvent.” But the debt due by Worrell was also secured by a lien on real estate, which was duly recorded. It was a part of the purchase money of land sold and conveyed by William Kyle, trustee for Amos and Darthula Worrell, by deed dated the 23d of February, 1858, and duly recorded on the same day in the clerk’s office of the county court of Carroll, in which county the said land was situate. In the said deed a lien was expressly reserved on the said land for the purchase money. It is not pretended that the land was not ample security for the purchase money. Here, then, was a double security of this debt, the *155 solvency of the debtor personally, and the specific lien reserved upon the land. Were there any peculiar and extraordinary circumstances in existence which warranted the collection of the said debt or any part of it in Confederate money at par, depreciated in value as it was *in the spring of 1863? Certainly not. What occasion had the trustee, in the execution of his trust, for the money, or any part of it, at that time? None whatever. The only person in the world who had any interest in it was the beneficiary in the trust, who had removed to the state of Missouri before the war, and continued since to reside there. No payment had been made to her by the trustee since the war commenced, and there would be no power to make such payment until the war was ended, Virginia and Missouri being on opposite sides of the belligerent line. No one could tell in the spring of 1,863 when the war would be at an end. That was about the middle of the war. It was the plain duty of this trustee to continue to hold, as he had a right to do and easily might have done, this well and permanently secured specie debt until the end of the war, instead of collecting it or any part of it in tlie spring of 1863 in greatly depreciated Confederate currency at par, only to invest the same ill Confederate bonds, no less depreciated in value below their nominal amount. In regard to the small amounts said by Coltrane to have been collected from other parties, he could not state from whom, the matter is altogether too vague to be of any account. Most, if not all, of the bonds and notes placed in his hands as trustee were doubtless good debts. He says in his answer, that “believing those amounts as secure as he could make them, he deemed it unnecessary to collect and loan the same to others, perhaps not as responsible.”
These bonds and notes were placed in his hands as trustee on the 27th of June. 1857. They were all due except the three bonds of C. I'\ Worrell, on the 30th of October, 1857, three and a half years before the war. The trustee had ample time to have collected them before the war, if such collection had been necessary or proper. If he did not do so, it was no doubt because *he considered them perfectly good. The bonds of Worrell, we have seen, were not only good by reason of the general solvency of the debtor, but also because they were secured by a lien on real estate; and they amounted to more than double the amount of all the other bonds put together. It may well be assumed in this controversy, therefore, that all of these bonds were good and solvent and well secured, and that the trustee had no power, in the spring of 1863, to receive payment of any of them in depreciated Confederate currency at par.
I am. therefore, clearlv of opinion, that there is no error in the decree in respect to the matter of the first assignment of error, and that this position is fully sustained by the cases cited on the subject by the counsel for the appellee. The following are the cases or some of them, which were so cited; Williams’ adm’r v. Skinker, 25 Gratt. 507, 518, 519 and 524; Crickard’s ex’or v. Crickard’s legatees, Id. 410, 418, 419, 424 and 425; Moss v. Moorman, 24 Id. 97; Hannah v. Boyd, 25 Gratt. 692, 701; Ammon’s adm’r v. Wolfe, &c., 26 Id. 621; Walker v. Beauchler, 27 Id. 511.
The second assignment of error in the decree (which, however, is not made in the petition for an appeal in the case), is that the appellant is charged with interest during the war.
In the ordinary case of debtor and credit- or, where they reside on the same side of a belligerent line, the debt bears interest during the war, which is recoverable, notwithstanding the act of assembly on the subject. But where they reside on different sides of the belligenent line, interest on the debt during the war is not recoverable; and this is not the effect of the said act of assembly, but of principles of law which have been long since recognized and established. This, however, is not an ordinary case of debtor and creditor, but a case in which a trustee holds bonds and notes in his hands for *the benefit of a cestui que trust. Can such a trustee avoid liability to his cestui que trust for interest on the trust fund during the war, when he has already collected such interest or may collect it hereafter?
It does not appear that the debtors to the trustee for the trust fund, or any part of it, ever have refused or will refuse to pay such interest to the trustee. The fact is, those debtors and the trustee always, during the war, lived on the same side of the belligerent line, and there was always on that side a hand to receive payment of interest from them. A trustee cannot derive a profit from the trust fund without rendering any equivalent therefor. He is bound to execute the trust for the benefit of the cestui que trust, whether the latter live at home or abroad, or the trust is to be executed in peace or in war. If the trust fund be perfectly secure, and bearing interest at the beginning of the war, he cannot voluntarily change it so as to make it insecure and bear no interest. T am therefore of opinion that there is no error in the decree in respect to the matter of the second assignment of error.
The third assignment of error in the decree is that the accounts should have been stated on the principle of the cases of Granberry v. Granberry, 1 Wash. 246, and Burwell’s ex’or v. Anderson, adm’r 3 Leigh, 348. (And this assignment of error was made for the first time in the argument.)
Without stating what the principle of those cases is, T think it very clear that the account stated by the commissioner in this case is stated on a principle which can do no injustice to the trustee who was bound by the express terms of the trust to apply the interest and so much as might be sufficient of the principal of the trust fund in his hands or under his control, to the sole and separate use of the said Darthula Worrell. She has not received from the trustee, as he admits, the whole amount of the ^interest on the trust fund, which she was certainly *156 entitled to receive, and he has not been charged with any interest upon interest in the mode of stating the account.
The fourth and last assignment of error in the decree is, that “the direction for the .removal of the fund to Missouri was erroneous. The trustee appointed in Missouri was not legally appointed, and is not entitled to receive the fund.”
I think the decree is not erroneous in this respect. The law under which this proceeding for the appointment of a trustee in and the transfer of a trust fund to another state, is in the Code, ch. 135,. §§ 6 and 7, p. 936, and is in these words:
“6. When any personal estate in this state is vested in a trustee resident therein, and those having the beneficial interest in the said estate are non-residents of this state, the circuit court of the county or corporation in which the said trustee may reside may, on a petition or a bill in equity, filed for that purpose, order him or his personal .representative to pay, transfer and deliver the said estate, or any part of it, to a nonresident trustee appointed by some court of record in the state in which the said beneficiaries reside.
“7. No such order shall be made in the case of a petition until notice of the application shall have been given to all persons interested in the trust estate, nor until the court shall be satisfied, by authentic documentary evidence, that the non-resident trustee appointed as aforesaid has given bond, with sufficient security, for the faithful execution of the trust, nor until it is satisfied that the payment and removal of such estate out of the state will not prejudice the right of any person interested or to become interested therein.”
The proceedings in this case for the appointment of a trustee in the state of Missouri are very formal, and there seems to be no defect therein, except that there is *no certificate of “the judge of the circuit court of Clinton county, Missouri,” added to the record of that court, attested by the clerk thereof, with the seal of the court annexed, which record is filed as an exhibit in this case. See Code, ch. 173, § 15, p. 1108. But there was no exception or objection to the said exhibit on that ground or any other, either in any of the answers or other proceedings in the case in the court below, nor until the said fifth assignment of error was made to the said decree. I think it was then too late to make the objection for the first time, and that the trustee in Missouri must be considered, as no doubt he was in fact, duly appointed.
The case comes within the category of cases to which the statute applies, authorizing a transfer of property of a cestui que trust to another state. “When any personal estate in this state is vested in a trustee resident therein, and those having the beneficial interest in the said estate are nonresidents of this state,” is the language of the statute.
Now, Mrs. Worrell is the only person who can be said to have any beneficial interest in the said estate, in the meaning of the statute. During her life she is certainly entitled to the interest on the subject, and so much of the principal as may be necessary for her comfortable maintenance; “and full power is given to her, if she should die before her husband, to dispose of the trust fund by any last will and testament by her to be made and executed as the laws of Virginia direct wills of personal estate to be executed; and in case she should survive her husband, then the funds of said trustee are to be paid over to said Darthula, to be disposed of and used by her as her absolute property.” After this full conveyance of the subject to her or for her use, the deed thus proceeds: “And the said Amos Worrell doth hereby relinquish *and release all claims to the said fund for himself and all persons claiming under him, and doth agree that the full control and use thereof shall be in the said Darthula, as herein provided for.” She is certainly entitled to the fund absolutely, subject only, if to anything, to one possible contingency, to-wit: the contingency of her dying before her husband without .having disposed of the trust fend by last will and testament as aforesaid. What would become of the fund in that single contingency it is unnecessary here to decide. But it is a contingency entirely within her power and control, which may at any time easily be exercised by her, and has no doubt already been so exercised. It cannot be regarded by the husband as of any value, and he has interposed no objection, on that or any other ground, to the removal of the trust fund to the state wherein the beneficiary resides. Can the trustee in Virginia interpose any such objection? The only substantial beneficiary having been for many years a resident of the state of Missouri, and intending permanently to reside there, ought not the trust fund be there also? The record shows how inconvenient has been her distant separation from the fund heretofore, how seldom and at what expense she has received any benefit from it, and how beneficial it would be to her to have it near at hand, while no person would be thereby injured.
Upon the whole. I am of opinion that there is no error in the decree, at least in substance, and that it ought to be affirmed, after being amended in the form of a draft which I have prepared, as a part of the foregoing opinion.
The other judges concurred in the opinion of MONCURE, P.
*The decree was as follows:
This day came again the parties by their counsel, and the court having maturely considered the transcript of the record of the said decree and the arguments of counsel, is of the opinion, for reasons stated in writing and filed with the record, that the decree appealed from instead of being as it is, should, and it is accordingly adjudged, ordered and decreed, that it be so amended as to be in words and figures following, to-wit: The cause came on this day to be heard upon *157 the bill of complaint, the exhibits filed, the several answers, the depositions of witnesses, the ''rder and decree heretofore entered therein, the report of Commissioner Brown, and argument of counsel. . .nd the court being of the opinion that the first statement of Commissioner Brown is the correct one in this case, with this exception, that the defendant, Tra B. Coltrane, should receive a credit for the amount of Confederate money-paid in taxes in 1864 and 1865, at its par value instead of its scaled value, a further credit of $23.75, of date March 12, 1864, and $147 of date February 1st, 1865, being the difference between the par value of said amount and the scaled value allowed by the r'--~n-nissinner. And the court doth receive, adopt and confirm the first statement of said report with the amendment aforesaid. It is therefore adjudged, ordered and decreed that the complainant, Darthula Worrell, recover against the defendant, Ira B. Coltrane, the sum of $2,557.54, principal, with legal interest thereon from the 20th day of April, 1875. and $495.28. interest, subject to a credit of $23.75, of date March 12th, 1864, and $147, of date February 11th, 1865, to be applied as a credit on the last mentioned amount, to-wit: the $495.28, interest.
And the court being satisfied by authentic documentary evidence in the cause that Granville M. Hiatt, of the ‘county of Clinton, in the state of Missouri, in which the said Darthula Worrell resides, has been duly appointed by the circuit court of said county to receive and hold as trustee the fund now held by the said Ira B. Coltrane, as trustee, for the benefit of the said Darthula Worrell, under the deed of trust in the proceedings mentioned, and also that the said Granville M. Hiatt, the now non-resident trustee appointed as aforesaid, has given bond with sufficient security for the faithful execution of the trust, and that the payment and removal of the said fund out of the state will not prejudice the right of any person interested or to become interested therein, it is therefore adjudged, ordered and decreed that the said trust fund now held by the said Coltrane as aforesaid, being the sums of money and interest hereinbefore recovered against him by the said Darthula Worrell as aforesaid, be paid, transferred and delivered to the said Hiatt, the non-resident trustee aforesaid, to be held and disposed of by him as such according to the terms of the deed of trust and the condition of the bond aforesaid. And to enforce the payment of the said sums of money and interest to him, he may sue out executions for the same on this decree and in the name of the said Darthula Worrell for his use as such trustee. And it is further adjudged, ordered and decreed that the said Darthula Worrell recover against the said Ira B. Coltrane her costs by her expended in the prosecution of this suit; and liberty is reserved to her, or her nonresident trustee for her benefit, to apply to this court in this clause hereafter, by motion or petition, for any further order or decree which may be necessary to carry into effect the decree.
And it is further adjudged, ordered and decreed that the said decree appealed from, as hereinbefore amended, be affirmed, and that the appellee, Darthula Worrell, recover against the appellant damages according to law ‘and her costs by her about her decree in the appeal expended; which is ordered to be certified to the circuit court of Carroll county.
Decree amended and affirmed.